IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

—————————————————————————

SCOTT A. C.,

                    Plaintiff,

          v.                                        Civil Action No.
                                                    5:20-CV-1530 (BKS/DEP)

COMMISSIONER OF SOCIAL SECURITY

                    Defendant.

—————————————————————————

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP                         EDWARD A. WICKLUND, ESQ.
250 South Clinton Street, Suite 210       HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                    HUGH DUN RAPPAPORT, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of

Social Security ("Commissioner") finding that he was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") and supplemental security income ("SSI") benefits for which he has applied. The matter has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. For the reasons set forth below, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in May of 1963, and is currently fifty-eight years of age. He was fifty-three years old at his alleged onset date of disability – February 17, 2017 – and fifty-five years old the time of his application for benefits in June of 2018. Plaintiff stands five feet and ten inches in height, and weighed between approximately one hundred and sixty-one and one hundred and eighty-five pounds at the relevant times. Plaintiff is divorced and lives in Oswego, New York with his girlfriend. He has two adult children.

Plaintiff reports having graduated from high school. He worked for many years as a maintenance worker for Oswego County until he was

ultimately placed on unpaid medical leave in November 2017 due to concerns about his ability to perform his job as a Senior Building Maintenance Manager in light of observed difficulties with focus, lack of attention to detail, and inability to process information correctly.

Plaintiff principally alleges that he suffers from a brain injury and neurocognitive deficits as a result of falling down stairs in 2014. As is relevant to his applications, plaintiff primarily treated for these impairments with Dr. Padma Ram and sources at Oswego Hospital. He also underwent multiple neuropsychological consultations. Plaintiff additionally alleges residual physical impairments related to his 2014 fall, including a left shoulder injury, broken left-side ribs, and a punctured lung. However, there is little documented treatment for these impairments during the relevant time period, and they appear to no longer have imposed any restrictions by the alleged onset date.

Plaintiff has reported that he was unable to continue working at his previous job because of pain and difficulty with comprehending, remembering how to do things, and performing heavy lifting. He was asked to leave that job because his employer considered him "a liability." In a typical day, plaintiff drives to buy coffee and a newspaper and take his girlfriend to and from work, watches television, does puzzles or reads, and

sometimes visits his mother. He also visits with friends and can perform household chores. Plaintiff reports that he is able to read, write, and do simple math.

II.    PROCEDURAL HISTORY

A.    Proceedings Before the Agency

Plaintiff applied for DIB and SSI payments under Title II and Title XVI of the Social Security Act on June 1, 2018. In support of his applications, he claims to be disabled due to a brain injury, neurocognitive deficits, a left shoulder injury, broken left-side ribs, and a punctured lung.

A hearing was conducted on January 13, 2020, by Administrative Law Judge ("ALJ") Charles M. Johnson, to address plaintiff's application. Following that hearing, ALJ Johnson issued an unfavorable decision on March 4, 2020. That opinion became a final determination of the agency on October 9, 2020, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

B.    The ALJ's Decision

In his decision, ALJ Johnson applied the familiar, five-step sequential test for determining disability. At step one, he found that plaintiff did not engage in substantial gainful activity during the relevant period. The ALJ next found at step two that plaintiff suffers from a severe neurocognitive

disorder that imposes more than minimal limitations on his ability to perform basic work functions.  The ALJ found that plaintiff's alleged physical impairments, however, neither met the durational requirement of the regulations nor reached the requisite level of impairment to be considered medically determinable severe impairments.

At step three, ALJ Johnson examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed, presumptively disabling conditions set forth in the Commissioner's regulations, specifically considering Listing 12.02.

ALJ Johnson next surveyed the available record evidence and concluded that, notwithstanding his impairments, plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, although he is limited to only simple, routine, and repetitive tasks.

ALJ Johnson went on to step four to determine that plaintiff is unable to perform his past relevant work.  Proceeding to step five, the ALJ concluded, after consulting a vocational expert, that plaintiff is able to perform the demands of other available work in the national economy,

citing as representative unskilled occupations the positions of floor waxer and kitchen helper.  Based upon these findings, ALJ Johnson concluded that plaintiff was not disabled at the relevant times.

C.   This Action

Plaintiff commenced this action on December 10, 2020.[1]  In support of his challenge to the ALJ's determination, plaintiff argues the ALJ failed to properly evaluate the opinion from examining neuropsychologist Dr. Victoria Londin and to account for the memory limitations discerned by Dr. Londin.  Dkt. No. 19.

Oral argument was conducted in this matter, by telephone, on April 27, 2022, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.

---

[1]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

*Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012);

*Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221

F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.

1998).  Where there is reasonable doubt as to whether an ALJ has applied

the proper legal standards, the decision should not be affirmed even

though the ultimate conclusion reached is arguably supported by

substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

If, however, the correct legal standards have been applied, and the ALJ's

findings are supported by substantial evidence, those findings are

conclusive, and the decision will withstand judicial scrutiny regardless of

whether the reviewing court might have reached a contrary result if acting

as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d

255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v.

Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must

be "more than a mere scintilla" of evidence scattered throughout the

administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation

marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal

whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining evidence from both

sides, because an analysis on the substantiality of the evidence must also

include that which detracts from its weight."  *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951);

*Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

      B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, at step five the agency

must examine whether the claimant can do any other work. *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.   Analysis

Plaintiff argues that the ALJ failed to properly evaluate the opinion from examining neuropsychologist Dr. Victoria Londin, in that he (1) never mentioned Dr. Londin by name in the decision; (2) did not discuss the relevant content of Dr. Londin's opinion; (3) did not articulate any findings concerning the supportability factor when assessing the opinion; and (4) ignored the fact that evidence, including prior neuropsychological testing, is consistent with Dr. Londin's opinion.

Because plaintiff's applications were filed after March 27, 2017, this case is subject to the amended regulations regarding the evaluation of

opinion evidence. Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case. 20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at \*5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule"). An ALJ must articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability[2] and consistency[3] of those opinions. 20 C.F.R. § 416.920c(b). The ALJ also may – but is not required to – explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any

---

[2]    On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[3]    On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

treatment relationship, the frequency of examinations by the source and the
purpose and extent of the treatment relationship, whether the source had
an examining relationship with the claimant, whether the source specializes
in an area of care, and any other factors that are relevant to the
persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

Neuropsychologist Dr. Victoria Londin conducted an examination of
plaintiff on August 24, 2017, to assess his neurocognitive functioning.
Administrative Transcript ("AT") at 442.[4]  In connection with her
assessment, Dr. Londin administered a number of tests, conducted a
mental status examination, and reviewed two pieces of evidence before
rendering her conclusions.  AT 442-43.  Based on the findings of her
examination, plaintiff's self-reports, and her review of the available records,
Dr. Londin reported the presence of "notable neurocognitive deficits,"
including "significant deficits in the area of immediate and delayed memory
for both discrete and thematic information," and observed that he is "unable
to retain information in immediate memory as well as after a brief delay,"
including "information that is discrete, such as a list of words or tasks as
well as a short story with a unifying theme."  AT 445.  Dr. Londin concluded

---

[4]     The Administrative Transcript is found at Dkt. No. 14, and will be referred to
herein as "AT __."

that plaintiff "is unable to meet job responsibilities and expectations fully and/or safely," and therefore "is unable to work at this time." *Id.*[5]

The ALJ found that the difficulties identified in Dr. Londin's opinion – which he referred to simply as the "neuropsychiatric evaluation in August 2017" without mentioning Dr. Londin by name – were inconsistent with the other evidence the ALJ had already discussed, the consultative examiner's findings, and the findings from the more recent neuropsychological evaluation. AT 21-22.

As an initial matter, plaintiff's argument that the ALJ essentially failed to discuss Dr. Londin's opinion is squarely contradicted by his decision. Although the ALJ stated only that the August 2017 neuropsychiatric examination revealed "some difficulties" when assessing the persuasiveness of the opinion evidence, that is not the only place in the decision where the ALJ discussed the opinion. AT 21-22. Rather, when analyzing the "B criteria" in conjunction with his analysis of the relevant Listings, the ALJ twice noted that the opinion indicated that plaintiff had significant deficits in immediate and delayed memory and that he was

---

[5]    The statements by Dr. Londin that plaintiff is unable to meet job responsibilities and unable to work are related to an issue reserved to the Commissioner and as such are inherently neither valuable nor persuasive, and the ALJ was not required to provide any analysis regarding those findings. 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3).

unable to retain information in immediate memory or after a short delay. AT 17-18.  The ALJ again repeated those findings when discussing the evidence related to the RFC determination.  AT 20.  It is abundantly clear that the ALJ acknowledged the specifics of the relevant portions of Dr. Londin's report that constitute her opinion, and the fact that he failed to mention her specifically by name does not undermine that assessment.

As to the ALJ's application of the relevant legal analysis commanded by the amended regulations, the Acting Commissioner concedes that the ALJ failed to articulate any findings related to the factor of supportability as required by 20 C.F.R. §§ 404.1520c, 416.920c, but argues that the failure to do so was nonetheless harmless because a "searching review of the record" shows that substantial evidence nonetheless supports the ALJ's finding.  Dkt. No. 24.

The Second Circuit has long acknowledged that a failure to apply the proper legal standard can be considered harmless error in the correct circumstances.  In *Schall v. Apfel*, 134 F.3d 496 (2d Cir. 1998), that court stated that, although remand is generally inappropriate in situations where "there is a reasonable basis for doubt [as to] whether the ALJ applied the correct legal principles," "[w]here application of the correct legal standard could lead to only one conclusion, we need not remand."  *Schall*, 134 F.3d

at 504-05.  The Second Circuit reaffirmed this principle in *Kohler v. Astrue*, 546 F.3d 260 (2d Cir. 2008), in which it found that the ALJ's failure to document his application of the psychiatric review technique required by the regulations could be harmless error so long as meaningful review could still be conducted regarding whether the ALJ's findings were supported by substantial evidence.  *Kohler*, 546 F.3d at 267-69 (concluding the error did prevent meaningful review based on the record in the case, but acknowledging that such a failure to adhere to the regulatory articulation requirement might be harmless in other cases).  In *Zabala v. Astrue*, 595 F.3d 402 (2d Cir. 2010), the Second Circuit again reaffirmed the principle from *Schall*, noting also that, "where application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration."  *Zabala*, 595 F.3d at 409.  It is therefore well-established that an ALJ's failure to follow the strict letter of regulations requiring the articulation of certain findings does not necessitate remand if it is clear that the conclusion reached by the ALJ is the only outcome that could have resulted from proper application of the appropriate legal standard.  This harmless error standard has been noted to apply to the failure to articulate findings regarding the persuasiveness of a source's medical opinion specifically.  *See Johnathan W. v. Saul*, 19-CV-1242, 2021

WL 1163632, at *7 (N.D.N.Y. Mar. 26, 2021) (Hummel, M.J.) (finding that ALJ's failure to articulate how persuasive he found a physician's opinion, including failing to explicitly explain the factors of supportability and consistency was not harmless error because that opinion could have impacted the ALJ's analysis in a meaningful way).

Based on a review of the record as a whole, I recommend a finding that the ALJ's failure to articulate how he assessed the factor of supportability is harmless error in this case because nothing in Dr. Londin's examination report would result in a different conclusion, or, even if her findings could raise questions regarding supportability, it is clear from the ALJ's assessment of all of the other evidence that the ALJ nonetheless would have concluded her opinion was still not persuasive.  In the "Behavioral Observations" section of her report, she recorded that plaintiff was well-groomed with normal posture and motor functioning, his speech was normal, he arrived on time, he was well attuned to task and situational demands, he understood task demands and instructions easily, he related in a cooperative manner with good social rapport, he answered all questions in a direct and seemingly open manner, he appeared to be a reliable historian, he showed no overt signs of cognitive dysfunction, emotional distress or pain, he worked with sustained effort and seemingly

good level of motivation, and he understood instructions and task demands easily.  AT 443.

In the "Neurobehavioral Status" section, Dr. Londin noted that plaintiff's thinking was logical, coherent and goal-directed, he had normal ideational productivity, his thought content was unremarkable and appropriate, he showed no evidence of thought disturbance, his intelligence appeared to be within average limits, his reasoning and judgment appeared sound, and his speed of mental processing was grossly intact.  AT 444.  As to plaintiff's psychological status, she observed he had a normal mood and full affect, made good eye contact, and had normal mental processing speed and psychomotor functioning.  *Id.*

Testing conducted by Dr. Londin revealed that plaintiff's intelligence was estimated to be average, his attention and executive functioning were low average, his language and visuospatial processing were intact, and his motor functioning was in the average range.  AT 444-45.  As to plaintiff's memory, Dr. Londin concluded that he had average recognition, but with impaired visual immediate and delayed memory, borderline range verbal discrete immediate and delayed memory, and grossly impaired verbal semantic delayed memory.  AT 444.

As can be seen, the only portion of Dr. Londin's report that revealed

17

abnormal findings was the results of the testing that she performed. However, even if those testing results could be construed as providing some support for her opinion, the ALJ clearly also found that Dr. Londin's opinion was inconsistent with the balance of the evidence in the record, including, as will be discussed, the results of neuropsychological testing performed more recently by another source. AT 21-22. Because I also recommend finding that the ALJ's conclusion in that respect is supported by substantial evidence, and because the other evidence in the record so squarely contradicts the extent of the limitations opined by Dr. Londin, I recommend a finding that no other outcome would have been warranted in this case even if the ALJ had properly articulated his rationale related to supportability.

In April of 2017, examining neurologist Dr. Patrick Hughes observed that plaintiff displayed normal physical and neurological functioning and that he scored a 30/30 on a mini mental status examination. AT 436. When he presented to treating physician Dr. Padma Ram in August of 2017 to determine whether he had any cognitive issues that would prevent him from working, Dr. Ram noted that plaintiff reported being independent with all activities of daily living, and the only relevant abnormality she observed was that plaintiff communicated with difficulty and had stuttering speech.

AT 501.  In November of 2017, Dr. Ram observed that plaintiff's speech was clear, his attitude was cooperative and appropriate, his mood was normal, his affect was appropriate, his thought process was normal without dementia or overt illogical thinking, his attention and concentration were grossly intact, and his judgment and insight were grossly intact.  AT 497.  A year later, in November of 2018, Dr. Ram recorded identical observations. AT 539-40.

In June of 2019, at which time plaintiff presented to discuss his application for disability benefits, Dr. Ram observed that plaintiff's speech was broken, but he was alert and oriented with a normal mood and affect. AT 560.  Later that month, Licensed Master Social Worker ("LMSW") Theresa Meyer conducted a psychosocial evaluation.  AT 578.  Plaintiff reported difficulty with clear speech, controlling anger, short term memory loss, and word confusion.  *Id.*  LMSW Meyer observed that plaintiff was oriented, made good eye contact, had normal psychomotor activity, was cooperative but mistrustful and anxious, had unproductive speech with stuttering and difficulty clearly articulating certain words, appropriate thought content, logical thought process, average estimated intelligence, average fund of knowledge, impaired recent memory but intact past memory, and fair insight and judgment.  AT 581.  The following month,

physician's assistant ("PA") Mary Useva noted that plaintiff reported he has been bored since retiring and that he sometimes forgets things.  AT 574. PA Useva observed that plaintiff was oriented, made good eye contact, was cooperative, had normal speech, had a coherent thought process with intact associations, and had good insight and judgment.  AT 575.

Plaintiff underwent a neuropsychological assessment with Dr. Rebecca Gavett in February 2020.  AT 604.  Plaintiff reported to Dr. Gavett that he experiences short-term memory loss, difficulty recalling names or conversations, difficulty finding words, decreased processing speed, and difficulty expressing his thoughts.  *Id.*  Dr. Gavett observed that plaintiff was pleasant and cooperative with adequate eye contact and a mood-congruent affect, he displayed no difficulty with basic comprehension, he was able to provide a relatively cogent history although he had difficulty with exact dates, and his spontaneous speech was fluent and grammatically correct with no significant word-finding difficulty, although he occasionally slurred words and had a slight stutter.  AT 606.  Testing revealed that plaintiff had an average full scale IQ, he was oriented and able to draw a clock showing specific times, his ability to perform digit span tests of concentration were in the low average range, his psychomotor processing speed was noted to be average although his processing speed index was in the borderline range,

his executive functioning was generally within the average range with the exception of verbal fluency requiring switching between two categories, his language abilities were generally average, and his memory was impaired but was generally noted to be in the low average range.  AT 606-07.  Dr. Gavett summarized that plaintiff was of average intellectual ability with intact performance in processing speed and naming, suppressed performance in attention, working memory, verbal fluency, contextual verbal learning and memory and aspects of executive functioning, and impaired performance in visuospatial abilities and noncontextual verbal and nonverbal learning and memory.  AT 607.  Based on her examination and testing, Dr. Gavett concluded that plaintiff experiences "mildly suppressed cognitive abilities in multiple domains with most notable deficits in visuospatial abilities and learning and memory.  *Id.*

As can be seen, although there are neuropsychological testing results that show that plaintiff has some deficits related to memory in particular, the evidence overwhelmingly does not support Dr. Londin's opinion that plaintiff is completely unable to retain information.  Plaintiff's citation to records from well before the relevant period and a few observations by sources of "stuttering," "slurred," or "broken" speech, and non-specific notations of impaired memory do not constitute sufficient

grounds to counteract the wealth of evidence supporting the ALJ's conclusion that Dr. Londin's opinion is inconsistent with the evidence.

Moreover, the ALJ found to be persuasive the opinions from both the state agency nonexamining psychologist, who overall found that plaintiff is capable of performing unskilled work, and the consultative examiner, who assessed only mild limitations in plaintiff's ability to understand, remember, and apply complex directions and instructions.  AT 21, 63-64, 508.  State agency psychologist Dr. T. Harding had the benefit of reviewing the findings from Dr. Londin, including the relevant neuropsychiatric testing results as documented in Dr. Londin's report, but nonetheless found that plaintiff is not as limited as Dr. Londin concluded.  AT 66-68.  Consultative examiner Dr. Dante Alexander relied on his own evaluation of plaintiff, which revealed clear voice quality, intact attention and concentration, only mildly impaired recent and remote memory, estimated average intellectual functioning, and good insight and judgment.  AT 507.  These opinions also show that the strong inconsistency of Dr. Londin's opinion with the rest of the evidence would inevitably outweigh any facial supportability of her opinion from the results of the neuropsychiatric testing she conducted, particularly as another medical source also considered the results of that testing when formulating his contrary opinion.  Simply put, even if the ALJ

had properly articulated his findings regarding to the factor of supportability, application of the correct legal standard in this case could only have led to the result the ALJ did in fact reach.

Plaintiff's argument that the ALJ misconstrued the more recent 2020 neuropsychological examination is merely his attempt to substitute his own interpretation of test results for that of Dr. Gavett.  As was already discussed, although Dr. Gavett noted that results showed impaired functioning in some areas, she assessed that plaintiff overall has only "mildly suppressed cognitive abilities" particularly related to some aspects of memory.  AT 604-07.  The ALJ did not therefore rely on his own interpretation of these testing results, but rather accurately recounted Dr. Gavett's interpretation.  Nothing in Dr. Gavett's report suggests that the ALJ's reliance on the term "mild" was contrary to that source's meaning.

Lastly, I note that the RFC limiting plaintiff to performance of only simple, routine, and repetitive tasks reasonably accounts for the limitations in plaintiff's memory as documented by the record as a whole, in that it reduces the amount he would need to rely on remembering when performing daily work tasks.  Moreover, although the evidence substantiates plaintiff's allegation that he was forced to leave his last job because of concerns that he was unable to perform up to standards due in

part to his memory difficulties, the vocational expert classified that position as a skilled position with a specific vocational preparation ("SVP") rating of seven.  AT 47-48.  Thus, the fact that plaintiff was demonstrably unable to perform his previous work does not suggest that he cannot perform an unskilled job within the confines of the limitation to simple, routine, and repetitive tasks.

For all of the foregoing reasons, I recommend that plaintiff's arguments be rejected and the ALJ's determination be affirmed.

IV.   SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 24) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 19) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:     May 3, 2022
           Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge